NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MOSHE SCABA, et al.,

Plaintiffs,

v.

JETSMARTER, INC., et al.,

Defendants.

Civil Action No. 18-17262 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Vlad Kaykov, Ernest Beynars, and JetSmarter, Inc.'s (collectively "Defendants" or "JetSmarter") Motion to Dismiss and Compel Arbitration and, in the alternative, for a Stay Pending Arbitration. (ECF No. 8.) Plaintiffs Moshe Scaba, Steven Scaba, Jack Scaba, Dalia Scaba, and Pia Scaba (collectively "Plaintiffs") opposed (ECF No. 16), and Defendants replied (ECF No. 17). Plaintiffs also filed a Writ of Attachment (ECF No. 14), which Defendants opposed (ECF No. 15). The Court has carefully considered the parties' submissions[1] and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, JetSmarter's Motion to Dismiss and Compel Arbitration is granted in part and denied in part.

---

[1] The Court has also reviewed Plaintiff's and Defendants' Notices of Supplemental Authority. (*See* ECF Nos. 19, 20, 21, 24, 27, 28, 30.)

## I. Background[2]

In exchange for a membership fee, Jetsmarter offers its members various air transportation services. Plaintiffs entered into an agreement (the "Membership Agreement") with Defendants, which required each Plaintiff to individually pay a $15,000 yearly membership fee. (Compl. ¶¶ 7-9, ECF No. 1; Defs.' Moving Br., Ex. 6 ("Membership Agreement"), ECF No.8-8.) Plaintiffs agreed to the Membership Agreement and paid the membership fees in full. (*Id.* at ¶¶ 9, 52-53.)

Plaintiffs entered into individual Membership Agreements via an online form, which required Plaintiffs to "click" a toggle button demonstrating their acceptance of the Membership Agreement. (Defs.' Moving Br. 6, ECF No. 8-1.) Plaintiffs could not have entered their payment information without clicking this button. (*Id.* at 7.) Adjacent to the acceptance toggle button were several hyperlinks and a disclaimer stating that "[b]y remitting the amount due under this invoice and accepting the terms and conditions of the [M]embership [A]greement, member will gain access to JetSmarter's service." (*See* Compl. ¶ 17; *see also* Defs.' Moving Br. 6.)

The Membership Agreement included a "Dispute Resolution" section, which provided, in pertinent part:

> Any claim or dispute between the parties and/or against any agent, employee, successor, or assign of the other, whether related to this Agreement, any of the Terms and Conditions, or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration by the American Arbitration Association by a sole arbitrator under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes then in effect, which are deemed to be incorporated herein by reference . . . . The place of arbitration shall be Broward County, Florida . . . .

---

[2] The Court construes the well-pled facts in the complaint as true on a motion to dismiss. Although the parties' agreement was not attached to the Complaint, it was referenced therein and is a "document that is integral to or materially relied upon in the Complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

(Membership Agreement ¶ 18.) The Membership Agreement also included a provision entitled, "Governing Law," which provided that the Membership Agreement "and all the rights of the parties hereunder shall be governed by, construed and enforced in accordance with the laws of the State of Florida without reference to the conflict of law principles of any jurisdiction." (*Id.* ¶ 17.)

Plaintiffs were largely satisfied with their memberships until the summer of 2018. (Compl. ¶ 10.) In March 2018, Plaintiffs communicated with Defendants prior to their annual renewal to ensure that they "would have all of the same benefits when they renewed as Defendant JetSmarter had advertised that many of [its] programs would no longer be available." (*Id.* ¶ 11.) Defendants replied that Plaintiffs were "grandfathered in." (*Id.*) Plaintiffs shortly thereafter learned that many of the benefits "experienced by them and reiterated as surviving had, in fact been removed." (*Id.* ¶ 12.)

Plaintiff initiated this action in December 2018, and bring the following six claims: Breach of Contract (Count One); Violation of Good Faith and Fair Dealing (Count Two); Consumer Fraud (Count Three); Respondeat Superior (Count Four); Fraud (Count Five); and Unjust Enrichment (Count Six). (*Id.* ¶¶ 16-54.) On February 1, 2019, Defendants filed the instant Motion, arguing the Court should dismiss the action and compel arbitration pursuant to the Membership Agreement's Dispute Resolution clause. (*See generally*, Defs.' Moving Br.) Defendants also note that a class arbitration is currently in progress in the state of Florida and has reached a preliminary settlement. (Defs.' Moving Br. 22; Defs.' First Suppl. Authority, ECF No. 19.) Plaintiffs oppose, arguing they never assented to the arbitration clause and the Membership Agreement is illusory. (*See* Pls.' Opp'n Br. 19-21, ECF No. 14-1.)

Plaintiffs also requested a Writ of Attachment, arguing: (1) Defendants' business was touted as being valued at around $1 billion; (2) Defendants are rumored to be in negotiations to be purchased for $20 million; (3) the purchase amount is unlikely to cover the fees and potential

3

judgments regarding the increasing number of lawsuits Defendants are facing; (4) those funds may be "dissipated" leaving JetSmarter's victims no recourse. (Pls.' Moving Br. 2.) Defendants opposed, asserting that, *inter alia*, Plaintiffs have neither shown a probability of a final judgment nor identified any property in New Jersey belonging to Defendants. (Defs.' Opp'n Br. 5-7, 10, ECF No. 15.)

## II. Legal Standard

As a threshold matter, the parties dispute whether the Court should review the instant motion under a Federal Rule[3] of Civil Procedure 12(b)(6) or Rule 56 standard. Plaintiffs argue that the applicable standard should be Rule 56. (Pls.' Opp'n Br. 4-7.) Plaintiffs argue that the arbitration agreement does not specify the types of disputes subject to arbitration, thus Plaintiff's intent to be bound by the arbitration agreement for this dispute is a material question of fact and the Rule 56 standard should apply. (*Id.*) Defendants contend it is undisputed that "Plaintiffs entered into a valid agreement containing an enforceable clickwrap agreement containing an equally enforceable arbitration provision." (Defs.' Moving Br. 10.)

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," yet, an exception to that rule is that the Court may consider "a document integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Here, Plaintiff explicitly relies upon the Membership Agreement in the Complaint, and therefore, the Court may consider that agreement in evaluating Defendants' Motion to Dismiss. The Court, therefore, is well-equipped to determine the applicability of the dispute resolution

---

[3] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

4

clause, and a Rule 12(b)(6) motion is appropriate. *See Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 771 (3d Cir. 2013); *see, e.g., Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *see also Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d at 773-74; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them"); *Alder Land Run, LP v. Northeast Natural Energy, LLC*, 622 F. App'x 164, 166-67 (3d Cir. 2015). The Court, therefore, will review this motion pursuant to a Rule 12(b)(6) standard.

### III. Discussion

In support of their Motion to Dismiss, Defendants first assert that Florida law should apply given the choice-of-law provision in the Membership Agreement. (Defs.' Reply Br. 2-4, ECF No. 17.) Defendants further argue that the Membership Agreement's Dispute Resolution clause requires the Court to compel arbitration in this matter. (Defs.' Moving Br. 10.) Defendants also contend that Plaintiffs assented to the Membership Agreement by "clicking" on the acceptance toggle button. (*Id.* at 12-17.) Finally, because there exists a "delegation provision," in the Membership Agreement, an arbitrator must determine the arbitrability of this dispute, including the "'gateway' questions[] of 'arbitrability.'" (*Id.* at 17.) Defendants, therefore, contend that Plaintiffs are precluded from seeking recovery with the Court. (*Id.* at 19-21.)

Plaintiffs, however, argue that they never assented to the arbitration clause, the Membership Agreement in its entirety is unenforceable, and that New Jersey law, rather than Florida law, governs this dispute. (*See generally* Pls.' Opp'n Br. 7.) The Court addresses each argument in turn.

#### A. Defendants' Motion to Compel Arbitration

Section 2 of the FAA requires that:

5

> a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"Whe[n] there is a contract between the parties that provides for arbitration, there is 'an emphatic federal policy in favor of arbitral dispute resolution.'" *Hoover v. Sears Holding Co.*, No. 16-4520, 2017 WL 2577572, at *1 (D.N.J. June 14, 2017) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Raynor v. Verizon Wireless (VAW), LLC*, No. 15-5914, 2016 WL 1626020, at *2 (D.N.J. Apr. 25, 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see also Maddy v. GE*, 629 F. App'x 437, 442 (3d Cir. 2015).

When a district court is presented with a motion to compel arbitration, it must answer the following two questions: "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 527 (3d Cir. 2009)). When performing this inquiry, the court applies "ordinary state-law principles that govern the formation of contracts." *Raynor*, 2016 WL 1626020, at *3 (quoting *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009)). Finally, "an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

### a. The Arbitration Provision is Valid

The parties disagree as to whether the Court should apply New Jersey or Florida state law to determine the validity of the arbitration provision. Plaintiffs argue that New Jersey state law should apply, because "in diversity . . . cases the federal courts when deciding questions of conflict of laws, must follow the rule prevailing in the state in which they sit." (Pls.' Opp'n Br. 7.) Plaintiffs assert that New Jersey has adopted the "most significant relationship" test, where "courts first determine whether an actual conflict exists between the laws of the relevant states; if there is no conflict, the analysis ends, and the court applies the law of the forum state." (*Id.*) Plaintiffs also argue that they have no relationship to Florida and application of Florida law would violate New Jersey's public policy. (*Id.*)

Defendants counter that "[i]t is well settled that when there exists a choice-of-law provision in a contract, that state's law should apply." (Defs.' Reply Br. 2.) Defendants argue New Jersey law agrees, holding that "when parties to a contract agree to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." (*Id.*) (citing *Emcon Assoc. v. Zale Corp.*, No. 16-1985, 2016 WL 7232772, at *3 (D.N.J. Dec. 14, 2016)) (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Defendants also argue that they have substantial relations to Florida, especially given that Defendants are located in Florida. (Defs.' Reply Br. 3.)

In considering motions to compel arbitration, "the Court applies ordinary state-law principles that govern the formation of contracts . . . ." *Emcon Assocs. v. Zale Corp.*, No. 16-1985, 2016 WL 7232772, at *3 (D.N.J. Dec. 14, 2016) (quoting *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009)). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Id.* (quoting *N. Bergan Rex Transp. v. Trailer*

7

*Leasing Co.*, 730 A.2d 843, 847 (N.J. 1999)); *see also Prescription Counter v. Amerisource Bergan Corp.*, No. 04-5802, 2007 WL 3511301, at *10 (D.N.J. Nov. 14, 2007) (finding that because the defendant corporation's principal place of business was in Georgia, there was "a reasonable basis for the parties' choice of [Georgia] law").

Here, the Membership Agreement expressly provides that any disputes shall be governed according to Florida law. (Membership Agreement ¶ 18.) The Complaint alleges that JetSmarter's principal place of business is located in Florida. (Compl. ¶ 2). Further, application of Florida law will not violate New Jersey's public policy because both New Jersey and Florida "favor[] arbitration as a mechanism [for] resolving disputes." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002); *see also Rey v. Bonati*, No. 08-806, 2008 U.S. Dist. LEXIS 125842, at *3 (M.D. Fla. July 30, 2008) (citation omitted) ("It is well settled under Florida law that arbitration is a favored means of dispute resolution and that courts should indulge every reasonable presumption to uphold these agreements."). The Court, accordingly, finds Florida law applies.[4]

The arbitration provision at issue is valid under Florida law.[5] Each Plaintiff, via a clickwrap agreement, assented to the terms of the Membership Agreement, which included the

---

[4] Notwithstanding the Court's determination that Florida law applies, the Court is not persuaded by Plaintiffs' arguments that the arbitration provision would be invalid under New Jersey law. (Pls.' Opp'n Br. 17.) Unlike the arbitration clause in *Atalese*, the arbitration provision here expressly provides that all disputes "shall be resolved **exclusively** by binding arbitration . . . ." (Membership Agreement ¶ 18 (emphasis added).) *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315-17 (N.J. 2014). Although the Court acknowledges that the arbitration provision does not explicitly address the differences between arbitration and pursuing relief within a court of competent jurisdiction, the subject arbitration provision's use of the term "exclusive" clearly signifies that the parties can pursue their claims only with binding arbitration, rather than pursuing relief in a court of competent jurisdiction. *See Kindred Nursing Ctrs. Ltd. v. Clark*, 137 S. Ct. 1421, 1426 (2017).

[5] Plaintiffs' argument that the Membership Agreement as a whole is illusory (Pls.' Opp'n Br. 20) is an issue for the arbitrator, not for the Court, to decide. Under Section 2 of the FAA, "an arbitration provision is severable from the remainder of the contract"; therefore, only challenges specifically to the validity of the arbitration agreement are relevant to "a court's determination of

subject arbitration provision. Florida routinely enforces clickwrap agreements.[6] *See, e.g., Salco Distributors, LLC v. iCode, Inc.*, No. 8:05, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits . . . [clickwrap] agreements are valid and enforceable contracts.").

Moreover, the arbitration provision clearly and unambiguously states that Plaintiff must submit to binding arbitration in the event an issue arises. (Membership Agreement ¶ 18.) The provision also provides that all disputes "shall be resolved **exclusively** by binding arbitration" and a "**sole arbitrator**" shall resolve those disputes. (*Id.* (emphasis added).) Thus because the arbitration provision is unambiguous, Plaintiffs' waiver of their right to sue in court is apparent on the face of the arbitration provision.[7] *See, e.g., Kaplan v. Kimball Hill Homes Fla., Inc.*, 915 So. 2d 755, 761 (Fla. 2d DCA 2005) ("[A]n agreement to arbitrate necessarily is understood to involve the relinquishment of the rights of access to courts and trial by jury"); *see also Henry v. Pizza Hut*

---

an arbitration agreement's enforceability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 64 (2010) (quoting) *Buckeye Check Cashing, Inc.*, 546 U.S. at 445 (2006).

[6] New Jersey also enforces clickwrap agreements. *See, e.g., Davis v. Dell*, No. 07-630, 2007 WL 4623030, at *2 (D.N.J. Dec. 28, 2007), *aff'd*, No. 07-630, 2008 WL 3843837, at *5 (D.N.J. Aug. 15, 2008) ("Under [] New Jersey . . . law, when a party uses his [or her] computer to click on a button signifying his [or her] acceptance of terms and conditions in connection with an online transaction, [the party] thereby manifests his [or her] assent to an electronic agreement.").

[7] Plaintiffs also argue that the Court should apply New Jersey state law because their claims fall under the New Jersey Consumer Fraud Act. (Pl.'s Opp'n Br. 7.) The Court emphasizes, however, that it only addresses arguments pertaining to "the validity and enforceability of the arbitration clause," because, "'[o]nce such a [valid arbitration] agreement is found, the merits of the controversy are left for disposition to the arbitrator.'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Great West. Mort. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)); *see also Kindred Nursing Ctrs. Ltd.*, 137 S. Ct. at 1426-27 (stating that the FAA "preempts any state rule discriminating on its face against arbitration"); *Emcon Assocs.*, 2016 WL 7232772, at *3 (finding that the plaintiff's assertion that the contract's choice of law provision "does not contain language that prevents [the p]laintiff from asserting claims under New Jersey statutory law" was "irrelevant to the [c]ourt's choice of law analysis" and determination regarding the validity of the arbitration provision).

*of Am., Inc.*, No. 07-1128, 2007 WL 2827722, at *6 (M.D. Fla. Sept. 27, 2007) (internal quotation marks and citation omitted) ("[The] loss of the right to jury trial is a fairly obvious consequence of an agreement to arbitrate.").

In *Singh v. Uber Technologies, Inc.*, this district court rejected the plaintiff's argument that he was not bound by the defendant's arbitration clause because he was not provided a copy of the arbitration clause, but merely shown a series of hyperlinks that contained the provisions. 235 F. Supp. 3d 656, 665 (D.N.J. 2017). The court ruled that assent is manifested to hyperlinked terms so long as the agreeing party is given reasonable notice of those terms' existence at the time of agreement. *Id.* at 666.

Similar to *Singh*, Plaintiffs clicked their acceptance to the Membership Agreement, and next to the acceptance toggle button were several hyperlinks and a disclaimer stating that the party was agreeing to the hyperlinked terms and conditions. (*See* Compl. ¶ 17; Defs.' Moving Br. 5-8.) Plaintiffs cannot claim that they are not bound by the Membership Agreement merely because they were unaware of the arbitration clause. At the time, they acknowledged the Membership Agreement, Plaintiffs had reasonable notice, via the hyperlinks and disclaimer, that they were agreeing to certain terms. Like the court's ruling in *Singh*, in the present case there was a valid agreement between the parties, which included the arbitration clause.

        **b.**     **The Arbitration Provision Delegates Arbitrability**

The Court next turns to the issue of arbitrability, *i.e.*, whether the issue falls within the scope of the Membership Agreement. *See, e.g., Beture v. Samsung Elecs. Am., Inc.*, No. 17-5757, 2018 WL 4621586, at *9-10 (D.N.J. July 18, 2018). "[P]arties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68-69 (internal quotations omitted). "[W]hen the parties' contract delegates the arbitrability question to an

arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). The Court may not decide the issue of arbitrability if a valid arbitration agreement delegates the issue of arbitrability to an arbitrator. *Id.* at 530.

Plaintiffs argue that there is a presumption that a court, not an arbitrator, decides an issue concerning arbitrability, and to overcome that presumption, it must be clear from the arbitration clause that the parties agreed to arbitrate arbitrability. (Pls.' Opp'n Br. 10-11.) The Supreme Court recently held in *Henry Schein v. Archer & White Sales, Inc.*, that contractual disagreements may arise "not only about merits of the dispute but also about the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute." 139 S. Ct. at 527; *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2013). The Supreme Court, determined that "[t]he [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions . . . ." and "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528.

Here, the arbitration provision expressly delegates the issue of arbitrability to an arbitrator; namely, it provides "**[a]ny claim or dispute** . . . whether related to this Agreement, any of the Terms and Conditions or the relationship or rights or obligations contemplated herein, including the validity of this clause, shall be resolved exclusively by binding arbitration." (Membership Agreement ¶ 18 (emphasis added).) As such, the Court does not reach the issue of arbitrability, as that is a matter for the arbitrator's review.

The Court, therefore, finds the arbitration provision valid and the scope of that provision an issue for the arbitrator to review. The Court, accordingly, grants Defendants' Motion to Compel Arbitration.

B.  **Defendants' Motion to Dismiss**

Defendants move to both dismiss this action and compel arbitration. Defendants' only argument in support of the Court dismissing, rather than staying, the matter consists of a single footnote providing in its entirety: "While the FAA requires a stay of any action subject to a valid arbitration agreement, this Court has the discretion to dismiss this action if all the issues raised are arbitrable." (Defs.' Moving Br. 10 n.1 (citing *Hoffman v. Fid. & Deposit Co.*, 734 F. Supp. 192, 195 (D.N.J. 1990).) Defendants' bare assertion fails to persuade the Court that it should dismiss, instead of stay, the matter. The Court, therefore, denies Defendants' Motion to Dismiss, and stays the matter pending the completion of arbitration pursuant to Section 3 of the FAA.

IV. **Writ of Attachment**

Plaintiffs also moved for a Prejudgment Writ of Attachment on JetSmarter's assets. (Pls.' Mot. for Writ of Attachment, ECF No. 14.) Specifically, Plaintiffs assert that it is rumored that Defendants' business will be sold for $20 million, and that amount is unlikely to cover the obligations Defendants will owe considering the increasing number of lawsuits Defendants are facing. (*See* Pls.' Writ Moving Br. 2, ECF No. 14-1.)

"Pre-judgment attachment is 'an extraordinary remedy, the availability of which is narrowly circumscribed by statute, [requiring] both the statute and the court rules proscribing the procedure for seeking pre-judgment attachment must be strictly construed.'" *Isr. Bank of N.Y. v. H.N. Int'l Grp.*, No. 16-6258, 2016 WL 6023155, at *3 n.2 (D.N.J. Oct. 14, 2016) (quoting *In re Estate of Balgar*, 944 A.2d 734, 742 (N.J. Super. Ct. Law Div. 2007)). Although the merits of the dispute shall be submitted to arbitration, this Court may still rule on Plaintiffs' Writ of Attachment. "The [FAA] does not deprive the district court of the authority to grant interim relief in an arbitrable dispute, provided the court properly exercises its discretion in issuing the relief." *Ortho Pharma. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811 (3d Cir. 1989) (citing *Teraydyne, Inc. v. Mostek*

*Corp.*, 797 F.2d 43, 47 (1st Cir. 1986)). "Indeed, so fundamental is the right to attach that the parties cannot consent in advance to forego that remedy." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002).

Rule 64 "governs the seizing of a person or property in an action in federal court." *Pricaspian Dev. Corp. v. Gonzalez*, No. 13-549, 2014 WL 1350498, at *1 (D.N.J. Apr. 7, 2014) (citing Fed. R. Civ. P. 64). Pursuant to Rule 64(a), "the law of the state where the federal court is located shall govern such remedies." *Id.* (citing Fed. R. Civ. P. 64(a)). Under New Jersey Court Rule 4:60-5(a),

> the Court may grant a motion for a writ of attachment upon a finding that '(1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment.'

*Pricaspian Dev. Corp.*, 2014 WL 1350498, at *1 (quoting N.J. Ct. R. 4:60-5).

To grant Plaintiffs' motion, the Court must first determine the probability that judgment will be granted in Plaintiffs' favor. Judgment is "probable if it can reasonably and fairly convincingly be accepted as true, factual, or possible without being undeniably so." *Sentry Ins. v. Sky Mgmt., Inc.*, 34 F. Supp. 2d 900, 905 (D.N.J. 1999) (quoting *Fravega v. Sec. Sav. & Loan Ass'n*, 469 A.2d 531, 534 (N.J. Super. Ct. Ch. Div. 1983)).

In *Pricaspian*, the plaintiff won a judgment against defendant in Colorado and filed a complaint and writ of attachment seeking to domesticate the judgment in New Jersey. *Pricaspian*, 2014 WL 1350498, at at *1. In denying the writ of attachment, the *Pricaspian* court determined that the plaintiffs failed to "offer any specific arguments . . . regarding their probability of ultimate success," and further, "the record as developed to date in th[e] litigation d[id] not adequately support such a conclusion." *Id.* at *2.

Similarly here, the present matter is only in its initial stages and no discovery has been completed. Therefore, like the court in *Pricaspian*, the Court is unable to determine at this juncture the likelihood of Plaintiffs' success. In fact, at this early stage of the litigation, it is unknown whether there even exists attachable property in New Jersey. Plaintiffs argue that Defendants, via their regular transactions in New Jersey, "presumably produce accounts receivable that constitute valuable assets." (Pls.' Writ Reply Br. 18.) Plaintiffs, however, concede that there is "no way for Plaintiffs to know whether [the sale of JetSmarter] would indeed produce assets in this State of New Jersey that could be attached." (*Id.*) Thus, Plaintiffs have failed to identify property or a specific location to attach the writ, and the Court finds Plaintiffs' arguments, which are mainly based on speculation, insufficient to grant the "extraordinary remedy" in which they seek. *See* N.J. Ct. R. 4:60-5(a)(3); *see also Isr. Bank of N.Y.*, WL 6023155, at *3 n.2. The Court, accordingly, finds Plaintiffs failed to establish they are entitled to the extraordinary remedy of a writ of attachment, and therefore, denies Plaintiffs' motion.

## V. Conclusion

For the reasons set forth above, it is hereby ordered that Defendants' Motion to Dismiss and Compel Arbitration is granted in part and denied in part. The Court also denies Plaintiffs' Motion for a Prejudgment Writ of Attachment. The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 21, 2019